# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1111

_____

| | | |
|---|---|---|
| Kenneth Dean Perkins, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Gary Grimes, et al., | * | [PUBLISHED] |
| | * | |
| Appellees. | * | |

_____

Submitted: September 25, 1998

Filed: November 16, 1998

_____

Before WOLLMAN, LOKEN, and KELLY,[1] Circuit Judges.

_____

PER CURIAM.

Kenneth Dean Perkins appeals from the adverse judgment entered by the district court[2] on his section 1983 failure-to-protect claim. Perkins argues that the court clearly

_____

[1]Judge Kelly died on October 21, 1998. This opinion is consistent with the vote he cast at conference on this case.

[2]The Honorable Beverly R. Stites, United States Magistrate Judge for the Western District of Arkansas, to whom the case was submitted by consent of the parties pursuant to 18 U.S.C. § 636(c).

erred in finding that appellees adequately protected him while he was a pretrial detainee. We affirm.

## I. BACKGROUND

On September 8, 1995, Perkins was arrested for public intoxication. He was booked at the Sebastian County, Arkansas, Adult Detention Center and placed in a holding cell for approximately five and one-half hours. During his last one and one-quarter hours there, Perkins shared the cell with R.B. Lee Wilson, who was also booked for public intoxication.

Perkins had previously been housed with Wilson without incident. On this occasion, however, the larger and heavier Wilson threatened Perkins and demanded sexual favors from him. At some point during this confrontation, Perkins began knocking on the cell door. Jailer Robert Seibech came to the door after "a little while" and peered through a small cell window. Perkins testified that he stood in front of the window and silently mouthed "help" but that Seibech closed the window cover and left. Perkins did not either knock on the door or yell for help again.

Perkins further testified that after some twenty minutes had passed Wilson threw him against a wall and then raped him. Perkins testified that following the rape, a jailer opened the cell door and asked whether Wilson was "getting some." Perkins, however, could neither identify this jailer nor explain why he had entered the cell. After the jailer left, Wilson pinned Perkins face-down on the floor and proceeded to rape him again. Perkins yelled twice, but succeeded only in angering Wilson, receiving further abuse as a result.

Upon being released, Perkins did not tell the jailers about the rapes, saying only, "That guy in there is a crazy fucker." Perkins then went to a local emergency room to obtain treatment for his injuries. An hour later, the sheriff's office advised William

Hollenbeck, a Sebastian County Criminal Investigator, that Perkins was at a local hospital and complaining of inmate rape. Hollenbeck investigated the complaint and determined that rape charges should be filed against Wilson. Wilson ultimately pleaded guilty to those charges.

Jailer Seibech, who was the intake/booking officer on duty on the night of the rapes, made the decision to place Wilson in the same holding cell as Perkins. Seibech acknowledged that Wilson had been in the jail numerous times for public intoxication and was well known by the jailers. However, Seibech denied any knowledge that Wilson had ever instigated any physical altercations. Seibech testified that once in his cell, Wilson desired only to lay down and sleep, that Wilson started problems only when other inmates bothered him, and that although Wilson "mouthed off," he obeyed commands. Jail Administrator Jim Rush provided similar testimony. Rush stated that Wilson was often jailed for public intoxication and normally beat on the doors and screamed but was not considered a threat or danger to other inmates.

Seibech explained that he had placed Perkins and Wilson in the same cell because Perkins was not obnoxious -- *i.e.*, provoking -- and was to be released soon. Seibech perceived no potential risk of harm, especially since the jailers conducted routine cell checks. Seibech added that he was no more than twenty feet away from the holding cell at all relevant times, and that the jail's policy is to check the cells at least four to five times an hour. Also, with respect to notice, Seibech testified that he had no memory of Perkins' mouthing the word "help." Seibech expressed his doubt that Perkins had actually mouthed the word and testified that if Perkins had done so, he would have taken Perkins into the hall for questioning.

## II. DISCUSSION

The Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners. Farmers v. Brennan, 511 U.S. 825, 833 (1994). Pretrial detainees are entitled to at least as much protection as a convicted inmate. See generally Thomas v. Booker, 784 F.2d 299 (8th Cir.) (en banc), cert. denied, 476 U.S. 1117 (1986) (analyzing a pretrial detainee's failure-to-protect claim under the same Eighth Amendment analysis used for similar claims brought by prisoners). Nevertheless, not every injury suffered by one prisoner or detainee at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. Farmers, 511 U.S. at 834.

A prison official violates the Eighth Amendment only if he acts with deliberate indifference to a substantial risk of harm to the prisoner/detainee. Id. To show deliberate indifference, the prisoner/detainee must prove both that the official's acts objectively caused a sufficiently serious deprivation and that the official had a subjectively culpable state of mind. Id. With respect to the latter requirement, the prisoner/detainee must prove that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official drew that inference. Id. at 837. This subjective element must be met, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Jensen v. Clark, 73 F.3d 808, 810 (8th Cir. 1996). Each stage of the analysis is fact-intensive. Jensen v. Clarke, 94 F.3d 1191, 1197 (8th Cir. 1996).

The district court found no constitutional violation because the defendants did not act with a subjectively culpable state of mind. Although the court agreed that the defendants were on notice that Wilson was a disruptive inmate, it found that they had no notice that Wilson posed a threat of serious injury to Perkins because Perkins did not effectively alert them that he faced such a threat. Moreover, the defendants' periodic cell checks yielded no information that would have put them on such notice.

Perkins argues that the district court erred in applying the deliberate indifference standard by relying on unreliable jailer testimony and by upholding the jail's unconstitutional random cell assignment policy.

We review the district court's factual findings for clear error. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). Clear error exists when, although there is evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). If a district court's finding is plausible in light of the record, the reviewing court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985).

We are not persuaded by Perkins' argument that the district court imposed what he characterizes as a "novel individual risk requirement." We find no indication in its memorandum opinion that the district court ignored or improperly applied precedent regarding the requirement of notice.

We cannot say that the district court clearly erred in finding that Perkins' jailers had no notice of his predicament. Although the testimony indicated that Wilson was an easily provoked detainee, the evidence also shows that Perkins and Wilson had previously been housed together without incident and that Perkins' jailers neither knew, nor had reason to know, that Wilson was a violent sexual aggressor, either on this or on a previous occasion. However degrading the attacks upon Perkins, we conclude that the district court not clearly err in finding that the defendants did not act with deliberate indifference to Perkins' safety.

Because he failed to raise this issue in the district court, we decline to address Perkins' argument that his jailers implemented a constitutionally violative random cell assignment policy.

We express our appreciation to appointed counsel for his zealous efforts on Perkins' behalf.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.