# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3873

_____

| | | |
|---|---|---|
| Antonio E. Blades, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Tim Schuetzle; Kevin Arthaud; | * | of North Dakota. |
| Paula Bader; Donald Redmann; | * | |
| Cordell Stromme; Chad Nelson, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 10, 2002

Filed: September 9, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and MURPHY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Antonio Blades appeals the order of the district court[1] granting defendants' motion for summary judgment and dismissing his complaint with prejudice. We affirm.

_____

[1] The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota, Southeastern Division.

I.

Antonio Blades, an inmate of the North Dakota Department of Corrections and Rehabilitation, filed a complaint under 42 U.S.C. § 1983, claiming that prison officials violated his eighth amendment rights by failing to protect him from a fellow inmate, Marlon Comes. Mr. Blades later added a claim complaining that a correctional officer discriminated against him because of his race in violation of the fourteenth amendment.

The defendants moved for judgment on the pleadings or in the alternative for summary judgment as to both claims. A magistrate judge[2] recommended that the defendants' motion for summary judgment on the eighth amendment claim be granted because Mr. Blades could not show that the defendants had acted with the requisite state of mind. The magistrate judge also recommended that the discrimination claim be dismissed because the facts that Mr. Blades alleged in support of it were not actionable. The district court adopted the recommendations, granted the defendants' motion for summary judgment, and ordered the complaint dismissed with prejudice.

II.

We deal first with the eighth amendment claim. A prison official violates the eighth amendment if he or she "acts with deliberate indifference to a substantial risk of harm to the prisoner." *Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To show deliberate indifference, the prisoner ... must prove both that the official's acts caused a sufficiently serious deprivation and that the official had a subjectively culpable state of mind." *Perkins*, 161 F.3d at 1130. "With respect to the latter requirement, the prisoner ... must prove that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official

_____

[2] The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota.

drew that inference." *Id.* This subjective state of mind must be present before a plaintiff can be successful because " 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Jensen v. Clarke,* 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted in *Jensen*).

Mr. Blades argues first that the prison knew as a general matter that Mr. Comes was dangerous and that when they released him into the prison population they put prisoners at risk for injury. "[N]ot ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials." *Farmer,* 511 U.S. at 834. The duty to protect inmates requires that prison officials "take reasonable measures to abate substantial risks of serious harm, of which the officials are aware." *Reece v. Groose,* 60 F.3d 487, 491 (8th Cir. 1995). We have held that prisons "are not required to segregate indefinitely all inmates whose original crimes suggest they might be capable of further violence." *Curry v. Crist,* 226 F.3d 974, 978 (8th Cir. 2000). In *Curry*, we also recognized the validity of the general view of prison officials that inmates serving life sentences tend to avoid trouble. *See id.* The warden in charge of Mr. Comes had a good objective reason to believe that, because Mr. Comes was serving a long sentence, he had a greater incentive to behave, and Mr. Comes assured the warden that he would do so. Thus, based on the relevant cases, the decision to release Mr. Comes to the general population does not rise to the level of deliberate indifference necessary to establish liability.

Mr. Blades also maintains that the prison officials should have kept Mr. Comes away from him because they knew that Mr. Comes had made a threat against him. The factual difficulty with this argument is twofold. First, prison officials acted reasonably following the investigation of the threats made by Mr. Comes by placing him in isolation and transferring Mr. Blades to another prison; Mr. Blades was returned to the prison at issue only temporarily for medical treatment. It is undisputed that the medical officials who transferred Mr. Blades back to the first prison did not

know that Mr. Comes had threatened him, and that the officials at the first prison did not know that Mr. Blades had been returned there for medical treatment when they released Mr. Comes from isolation.  Though this lack of coordination on the part of prison officials might well give rise to an inference that they were negligent, mere negligence provides insufficient support for a conclusion that Mr. Blades's eighth amendment rights were violated.  There is no evidence that the officials of the two prisons showed deliberate indifference to Mr. Blades's safety by releasing Mr. Comes back into the general population.

Mr. Blades's own statements that Mr. Comes posed no risk of harm to him would furnish a bar to his claim even if prison officials had been aware that he would have come in contact with Mr. Comes when he returned to the first prison. Mr. Blades was interviewed by prison officials after they learned of the threat by Mr. Comes.  While it is true that the prison officials did not tell Mr. Blades about the threat, Mr. Blades testified at a hearing in the prison that he knew from several sources that Mr. Comes had threatened to kill him, but that he believed that he was in no danger from Mr. Comes and that he did not require any protection from him. Mr. Blades, moreover, does not deny that he knew of the threat.  A case on point is *Jackson v. Everett,* 140 F.3d 1149 (8th Cir. 1998), in which we concluded that a guard who failed to separate inmates did not recklessly disregard the risk of harm to one of them, since the guard had investigated an alleged threat to the plaintiff by questioning both inmates and they both had denied that they had any problems with each other.  *See id.*  We were careful to point out in *Jackson* that the matter of deliberate indifference must be determined with regard to the relevant prison official's knowledge at the time in question, not with "hindsight's perfect vision," 140 F.3d at 1152, and that "threats between inmates are common" and do not, in every circumstance, " 'serve to impute actual knowledge of a substantial risk of harm,' " *id.* (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996)).

Mr. Blades's final argument, namely, that the prison was deliberately indifferent to the risk of harm to him when it failed to notify him that Mr. Comes had threatened him, also fails. Most damaging, perhaps, to this claim is the undisputed fact that, as we have said, Mr. Blades already had knowledge of the threats and yet he repeatedly assured prison officials that there was no problem between him and Mr. Comes; he even denied that he needed any protection from Mr. Comes. Furthermore, there is no case law supporting Mr. Blades's broad assertion that a failure to inform a prisoner of a threat against him is deliberately indifferent to his safety when, as here, prison officials in fact took steps to protect the prisoner from that threat: As we have said, prison officials sent Mr. Comes to isolation and transferred Mr. Blades to another prison upon concluding their investigation of the threat.

III.

Mr. Blades's appeal from the dismissal of his racial discrimination claim is without merit. As the magistrate judge recognized, the incidents of which Mr. Blades complains do not, as a matter of law, amount to unconstitutional racial discrimination. He alleges that a guard ridiculed the color of his palms and told him to smile so that he could be seen in the dark. Though these words are thoroughly offensive, and it is particularly reprehensible for a government official to utter them in the course of his official duties, we believe that the use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the fourteenth amendment. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Williams v. Bramer*, 180 F.3d 699, 705-06 (5th Cir. 1999); *cf. Simmons v. O'Brien*, 77 F.3d 1093, 1094 n. 2 (8th Cir.1996); *Burton v. Livingston,* 791 F.2d 97, 101 n.1. (8th Cir. 1986); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985). The district court properly dismissed Mr. Blades's racial discrimination claim because the offensive statements did not rise to an actionable level.

IV.

For the reasons indicated, we believe that the district court properly granted the defendants' motion for summary judgment. We therefore affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.