# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3017

_____

| | | |
|---|---|---|
| Michael David Lenz, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Charlie Wade, Jr., Sgt. Cummins Unit, | * | |
| ADC (originally sued as Wade); | * | |
| Louis Seamster, CO-I, Cummins Unit, | * | |
| ADC (originally sued as Seamster); | * | |
| Kenneth Bell, Lt. Cummins Unit, | * | |
| ADC (originally sued as Bell); | * | |
| Arkansas Department of Correction; | * | |
| Larry Norris, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| M.D. Reed, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| Loren Burrer; Percy Sergeant, Mr., | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: June 11, 2007
Filed: June 20, 2007

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Following a two-day bench trial, the district court entered a judgment against Charlie Wade, Jr. (Officer Wade), Kenneth Bell (Officer Bell), and M.D. Reed (Warden Reed) for inflicting cruel and unusual punishment on Michael Lenz (Lenz). Warden Reed appeals. We reverse the judgment against Warden Reed and remand.

I.    BACKGROUND

Lenz is an inmate within the Arkansas Department of Correction (ADC). At the time of the incident on January 24, 1998, Lenz and three other inmates were housed in isolation in the Cummins Unit of the ADC, where Warden Reed was the warden. As a result of an incident between an officer and one of the inmates, several officers instructed the inmates to allow themselves to be handcuffed. Lenz refused to be handcuffed. Officer Wade, Officer Bell, and the other officers doused Lenz and other inmates with pepper spray. Lenz then put on the handcuffs. Pursuant to an ADC policy, the officers took the other inmates affected by the pepper spray to the showers, however, the officers took Lenz to the captain's room, which is an enclosed room without cameras. In the captain's room, Officer Wade, Officer Bell, and other officers beat Lenz, who was still handcuffed, and shocked him with a shock stick.[1]

_____

[1]On January 7, 1998, similar violence occurred in the Cummins Unit. After inmates threw water or urine on a female officer, other officers doused the inmates with pepper spray. The officers then took inmates Kiloe Page (Page) and George Proby (Proby) to the captain's room. In the captain's room, Officer Wade, Officer Bell, and other officers beat Page and Proby and used shock sticks in the inmates' "behinds."

The district court found Warden Reed learned of the January 7 violent incident after the January 24 violent incident because "[Warden Reed] did not receive [Page's grievance] until February 2, 1998, which was after the Lenz incident." The district court's factual finding is not clearly erroneous and is not challenged by Lenz. Thus, the January 7 violent incident is not relevant to determining whether Warden Reed exhibited deliberate indifference. See Blades v. Schuetzle, 302 F.3d 801, 804 (8th Cir.

As a result of the beating, Lenz suffered severe injuries, including a locked jaw and a broken rib. Lenz did not receive immediate medical treatment for his injuries despite an ADC policy that requires inmates who are shocked with shock sticks to receive immediate medical attention. Warden Reed was not present during the January 24 violent incident.[2]

Before January 24, 1998, Warden Reed had reviewed several complaints regarding Officer Wade and Officer Bell. First, inmate Greg Rose (Rose) alleged Officer Wade "jumped" him on February 26, 1996. Warden Reed investigated the grievance, concluding the evidence did not support Rose's allegations. Warden Reed then referred the grievance to Internal Affairs, which concurred with Warden Reed's conclusion. Second, inmate Tommy Radford (Radford) accused Officer Wade of beating him on May 22, 1996. After investigating the matter, Warden Reed concluded the evidence supported the accusations and (1) suspended Officer Wade for one week without pay; (2) counseled Officer Wade; (3) told Officer Wade "a reoccurance [*sic*] of this type of behavior will not be tolerated," meaning termination; and

_____

2002) ("[T]he matter of deliberate indifference must be determined with regard to the relevant prison official's knowledge at the time in question, not with 'hindsight's perfect vision.'" (quoting Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998))).

[2]Lenz attempted to file a grievance with the ADC regarding the January 24 violent incident, however, Officer Bell destroyed Lenz's completed grievance form. The district court concluded Lenz was prevented from exhausting Lenz's available administrative remedies. See generally Lyon v. Vande Krol, 305 F.3d 806, 808 (8th Cir. 2002) (en banc) ("[I]nmates cannot be held to the exhaustion requirement of the [Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321-66, codified in part at 42 U.S.C. § 1997e,] when prison officials have prevented them from exhausting their administrative remedies."). Under the Prison Litigation Reform Act, failure to exhaust the available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction. See Jones v. Bock, 127 S. Ct. 910, 919-922 (2007). Because this issue has not been raised on appeal, we will not consider it further. See United States v. Paz, 411 F.3d 906, 910 n.4 (8th Cir. 2005) (stating we will not consider issues that have been abandoned).

(4) temporarily reassigned Officer Wade to building security for about three months. Officer Wade's beating of Radford was Officer Wade's first instance of disciplinary action since joining the ADC in 1989. Warden Reed believed Officer Wade's misconduct was a one-time event and did not constitute a pattern of misconduct. Third, inmate Patrick Sherman (Sherman) alleged Officer Wade attacked him on October 29, 1996. Warden Reed investigated the grievance, concluding Officer Wade used pepper spray only after Sherman attempted to kick Officer Wade. Fourth, inmate Marcus Copeland (Copeland) accused Officer Bell of punching him and pushing his head against a wall. After an investigation, Warden Reed concluded Copeland's accusations were unfounded. Fifth, inmate Rickey Stewart (Stewart) alleged Officer Bell and another officer shocked him after he refused to be handcuffed. After investigating the grievance, Warden Reed concluded Stewart's allegation could not be corroborated. If an inmate's grievance could not be corroborated, then Warden Reed denied the grievance.

Lenz filed a complaint pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993, Ark. Code §§ 16-123-101–16-123-109,[3] against Officer Wade, Officer Bell, Director Larry Norris (Director Norris), Warden Reed, and others. A magistrate judge held a bench trial and issued a report and recommendation, which the district court adopted, concluding (1) Officer Wade and Officer Bell inflicted cruel and unusual punishment on Lenz, (2) Director Norris's actions did not exhibit deliberate indifference, and (3) Warden Reed's actions exhibited deliberate indifference. The district court awarded Lenz $15,000 in compensatory damages, $36,562.50 in attorney fees and $3,424.45 in costs assessed against Officer Wade, Officer Bell, and Warden Reed, jointly and severally. The district court further awarded punitive damages of $10,000, allocated $5,000 each to Officer Wade and Officer Bell.

---

[3]With respect to prisoners, the cruel and unusual punishment analysis under the United States Constitution and the Arkansas Constitution is the same. Grayson v. Ross, 454 F.3d 802, 811-12 (8th Cir. 2006).

Warden Reed appeals, challenging the district court's finding that Warden Reed's actions exhibited deliberate indifference and also the district court's calculation of the compensatory damages award. Officer Wade and Officer Bell did not appeal the judgment of the district court.

## II.    DISCUSSION

After a bench trial, we review for clear error the district court's findings of fact and we review de novo the district court's legal conclusions. Snider v. United States, 468 F.3d 500, 509 (8th Cir. 2006); see also Fed. R. Civ. P. 52(a).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. "'[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). Prison officials must provide humane conditions of confinement, including protecting inmates from violence. See Jensen v. Clarke, 94 F.3d 1191, 1197 (8th Cir. 1996). Unnecessary and wanton inflictions of pain, including inflictions of pain without penological justification, "'constitute[] cruel and unusual punishment forbidden by the Eighth Amendment.'" Hope v. Pelzer, 536 U.S. 730, 737 (2002) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.'" Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

A prison official, such as Warden Reed, "may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." Ambrose v. Young, 474 F.3d 1070, 1079 (8th Cir. 2007) (quotation omitted). A prison official, nonetheless, violates the Eighth Amendment by failing to protect an inmate from a substantial risk of serious harm to the inmate. See Blades v. Schuetzle, 302 F.3d 801, 803 (8th Cir. 2002).

A violation of the Eighth Amendment based on a failure to protect has two parts. First, the conditions that result from the failure to protect the inmate must pose a substantial risk of serious harm to the inmates. Farmer, 511 U.S. at 834. "This objective requirement ensures that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." Jensen, 94 F.3d at 1197. Here, no dispute exists that the abusive conditions that developed at the Cummins Unit posed a substantial risk of serious harm to the inmates.

Second, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates. See Farmer, 511 U.S. at 834. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "This subjective state of mind must be present before a plaintiff can be successful because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Blades, 302 F.3d at 803 (internal quotation marks omitted). This requisite state of mind is akin to recklessness, which is "more blameworthy than negligence," yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmates. See Farmer, 511 U.S. at 835, 839-40.

An obvious risk of a harm justifies an inference a prison official subjectively disregarded a substantial risk of serious harm to the inmates. See Hope, 536 U.S. at 738. Nevertheless, "[a] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability." Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989). "However, as the number of incidents

-6-

grow[s], and a pattern begins to emerge, a finding of tacit authorization or reckless disregard becomes more plausible." Id.

The evidence shows Officer Wade used excessive force on only one substantiated occasion, resulting in a one-week suspension without pay, counseling by Warden Reed, a reprimand, and temporary reassignment. Inmates filed several other uncorroborated grievances alleging the use of excessive force by Officer Wade and Officer Bell. As of January 24, 1998, Warden Reed had actual knowledge of only a single corroborated incident involving the use of excessive force by Officer Wade. Warden Reed investigated the other grievances and each time concluded neither Officer Wade nor Officer Bell had acted improperly. Based on Officer Wade's use of excessive force against Radford, combined with the other uncorroborated accusations of excessive force, Warden Reed may have suspected Officer Wade (and possibly Officer Bell) posed substantial risks of serious harm to the inmates. However, neither unsupported conjecture nor negligence regarding a substantial risk of serious harm to the inmates is sufficient to prove deliberate indifference. See Farmer, 511 U.S. at 835. Lenz never presented any direct or circumstantial evidence showing Warden Reed actually knew Officer Wade and Officer Bell posed substantial risks of serious harm to the inmates. Cf. Tucker v. Evans, 276 F.3d 999, 1003 (8th Cir. 2002) (reversing the denial of qualified immunity to supervisors because, in part, the evidence did not demonstrate the supervisors knew of and deliberately disregarded "an excessive risk to inmate health and safety"). The record here does not establish Warden Reed ever had the requisite knowledge or drew the necessary inferences to support a claim of deliberate indifference. See Farmer, 511 U.S. at 837.

Davis v. Delo, 115 F.3d 1388 (8th Cir. 1997), relied upon by Lenz and the district court, is not to the contrary. In Davis, we held the record supported the conclusion a supervisor exhibited deliberate indifference to a substantial risk of serious harm to the inmates when the supervisor (1) had received numerous letters and other complaints accusing the officer of using excessive force, (2) had not investigated

the accusations, and (3) ignored recommendations from other officials that the officer be reassigned or discharged. Id. at 1392-93, 1396. Based on the evidence, the district court found the supervisor "had knowledge that [the officer] had a propensity to use excessive force." Id. at 1396. In contrast here, Warden Reed investigated all five accusations, substantiated only one, and did not ignore recommendations for reassignment or discharge. Warden Reed actually counseled, suspended, reprimanded, and reassigned Officer Wade for the one substantiated accusation. The record does not sufficiently show Warden Reed knew by January 24, 1998, that Officer Wade and Officer Bell had a propensity to use excessive force or posed substantial risks of serious harm to the inmates.

Additionally, Officer Wade and Officer Bell were not obvious risks to harm the inmates. The evidence indicated Warden Reed believed Officer Wade's use of excessive force against Radford was a one-time event and not a pattern of misconduct. A single substantiated incident involving excessive force in Officer Wade's seven-year career does not indicate the officer was an obvious risk to harm the inmates. Cf. Riley v. Olk-Long, 282 F.3d 592, 595-96 (8th Cir. 2002) (affirming the district court's denial of the supervisor's and warden's motions for judgment as matters of law because the officer "was the subject of numerous investigations concerning his inappropriate behavior with inmates" and the supervisor and warden believed the officer was a problem and may be sexually assaulting inmates). Moreover, the uncorroborated grievances only indicated inmates complained about Officer Wade and Officer Bell in the same fashion the inmates regularly complained about many other officers. (Warden Reed responded to 24,352 grievances from 1996 to 1998, 82 involving physical abuse charges.)

The district court primarily was convinced Warden Reed exhibited deliberate indifference because, after the one substantiated violent incident in May 1996, Warden Reed did not provide Officer Wade with counseling, anger management, or some

other remedial program before returning Officer Wade to the isolation unit.[4] However, as the district court found, Warden Reed responded to the May 1996 violent incident by suspending Officer Wade for one week without pay, and counseling, reprimanding, and temporarily reassigning Officer Wade to another unit. The district court's criticism of Warden Reed's disciplinary choices does not support a finding of deliberate indifference by Warden Reed. Federal courts are in no position to so finely tune a warden's supervision and discipline of officers in a state prison, such as the district court conducts here.[5]

Therefore, we reverse the district court's finding of liability as to Warden Reed. Having made this determination, we need not consider Warden Reed's argument the district court erred in calculating Lenz's compensatory damages. Lenz's pro se motions are hereby denied.

## III.   CONCLUSION

We reverse the judgment against Warden Reed and remand for further proceedings consistent with this opinion.

_____

[4]The district court reasoned "[h]ad [Warden] Reed [after the May 1996 violent incident] provided some sort of remedial program for [Officer] Wade, such as counseling or anger management, together with a supervised schedule for returning back to work in the isolation area, the [c]ourt probably would reach a different conclusion concerning liability."

[5]"The Constitution charges federal judges with deciding cases and controversies, not with running state prisons." Lewis v. Casey, 518 U.S. 343, 364 (1996) (Thomas, J., concurring).