PER CURIAM.
Khalifah Abd-al Mubaymin Faruq appeals the district court’s adverse grant of summary judgment on his 42 U.S.C. § 1983 action. Faruq sought damages and injunctive relief against Leon Vickers, a Correctional Medical Services (CMS) nurse administrator. Faruq alleged that Vickers had acted with deliberate indifference to his medical needs by confiscating orthotic devices which had been prescribed by a physician for his unstable knees; as a result he is severely inhibited in his ability to function in prison and has suffered constant pain from bone, ligament, and tendon misalignment. Upon de novo review and viewing the evidence and all reasonable inferences in the light most favorable to Faruq, see Mason v. Corr. Med. Servs., Inc., 559 F.3d 880, 884-85 (8th Cir.2009), we conclude that Faruq has raised genuine issues of material fact as to whether Vick- *761 ers exhibited deliberate indifference to his medical needs.
To prevail on his Eighth Amendment claim, Faruq must show that (1) he suffered from an objectively serious medical need and (2) Vickers knew of, but deliberately disregarded, that need. See Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir.2011). With respect to the first element, Vickers does not dispute that Faruq’s medical need was serious. Faruq had been medically prescribed bilateral orthotic devices or braces after undergoing surgery on his left knee and injuring his right knee. He was told he would need the braces permanently and had previously worn them for two years in the prison’s general population and in administrative segregation.
As to the second element of Faruq’s claim, he need not prove that Vickers “purposefully caus[ed] or knowingly br[ought] about a substantial risk of serious harm.” Schaub, 638 F.3d at 915. He need only prove that Vickers acted with a state of mind “equivalent to criminal-law recklessness,” id. (citing Lenz v. Wade, 490 F.3d 991, 995 (8th Cir.2007)), which may be inferred from circumstantial evidence. Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir.1998) (citing Farmer v. Brennan, 511 U.S. 825, 842-43 & n. 8, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). In Sanchez we concluded that “fail[ure] to inquire” appropriately into a prisoner’s medical condition may provide evidence of deliberate indifference sufficient to survive summary judgment. Sanchez, 144 F.3d at 1156. Similarly here, we conclude that the record viewed favorably to Faruq is sufficient to raise a genuine issue of fact as to whether Vickers deliberately disregarded electronic medical records confirming that Faruq had medical approval to use the braces. See Pool v. Sebastian Cnty., Ark., 418 F.3d 934, 942 (8th Cir.2005).
Faruq’s braces were initially seized by custody officials in October or November 2008. Faruq complained of his resulting injuries to prison medical staff who informed him in early December that the seizure of his braces was “a custody issue.” Later, a prison medical official requested the return of the braces “unless there are restrictions due to beng [sic] in [administrative segregation],” but the braces were not returned. Subsequent entries in Fa-ruq’s electronic medical records appear to show confusion over the location of Fa-ruq’s braces. One entry states, “What happened to the knee braces? Can they be found?” The next entry follows, “Allegedly custody removed them and I assume that is where they are.” The braces were eventually returned to Faruq at the direction of a nurse, but custody officials reconfiscated them the same day after conferring with Vickers, who stated that Fa-ruq had not been medically approved for them.
Vickers claims that he determined Fa-ruq was not approved for the braces after reviewing three electronic medical record entries from December 23 and 31. He maintains that he interpreted the December 23 entry to “note[] [Faruq’s] non-approval” for the braces, but the key language on which he claims to have relied was entered January 7, the very day he determined that Faruq lacked approval for the braces. It is unclear from the record whether this language was entered before or after Vickers made his determination. Viewing the record in the light most favorable to Faruq, see Mason, 559 F.3d at 884, a reasonable inference can be drawn that the language was added afterward, perhaps even based on Vickers’ determination. Prior to Vickers’ determination, Fa-ruq had never been denied approval, and after each of his visits medical staff had requested that the braces be returned to *762 him.[1]
Similarly, while Vickers attested that he interpreted a doctor’s December 23 entry as not having approved Faruq’s braces, that entry stated that the braces should be returned to Faruq unless they were restricted due to his placement in administrative segregation, i.e., for security reasons. The physician’s entry thus appears on its face to indicate that Faruq had medical approval for the braces which was contingent only on concerns of security. There is also no indication that Vickers attempted to determine whether Faruq had been approved for the braces after he received letters from Faruq on January 13 and February 18 providing the dates when the physician had recommended and approved the braces and identifying the doctors involved. The electronic medical records contained entries confirming the content of Faruq’s letters.
In such circumstances, the district court should not have granted summary judgment where genuine issues of material fact remained. See Sanchez, 144 F.3d at 1157. Accordingly, we deny Faruq’s motion to expand the record, reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.

. The dissent disputes this point, but it misreads the record. The key language bears a date stamp reading "20090107,” meaning January 7, 2009. This is the same day Vick-ers reviewed Faruq’s medical records. If as Vickers stipulates "there were no entries for that date" when he conducted his review, he could not have relied on that language in making his determination.