**Robert A. CORNELL, Appellee/Cross–Appellant,**

v.

**Charles WOODS; Harold Kropp; Charles Harper; Ronald Welder; John Henry; John Emmett; Larry Moline; and Paul Hedgepeth, Appellants/Cross–Appellees.**

Nos. 94–3548, 94–3552.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1995.

Decided Nov. 8, 1995.

R. Andrew Humphrey, Asst. Atty. Gen., Des Moines, IA, argued for appellant.

Michael P. Joynt, Des Moines, IA, argued for appellee.

Before FAGG, FLOYD R. GIBSON, and MAGILL, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Appellants (collectively the "prison officials") appeal the district court's [1] order finding them liable under 42 U.S.C. § 1983 (1988), and awarding inmate Robert A. Cornell $2,163.67 in actual damages and $29,039.00 for attorney's fees. In addition, Cornell has filed a cross-appeal challenging certain aspects of the district court's decision. Finding no error, we affirm the district court's opinion.

1. The HONORABLE DONALD E. O'BRIEN, Senior United States District Judge for the Southern District of Iowa.

## I. BACKGROUND

In 1977, the State of Iowa convicted Robert A. Cornell of first degree murder and sentenced him to life imprisonment with no possibility of parole. From 1976 until 1987, Cornell resided in the Iowa State Penitentiary ("ISP"), a maximum security prison. Cornell eventually achieved the designation of "honor lifer" due to his exemplary behavior and conduct at ISP. Because he also met certain other criteria,[2] prison officials in 1987 approved his transfer to the John Bennett Correctional Center ("JBCC"),[3] a medium security facility located adjacent to ISP.

On September 18, 1987, two representatives from the penitentiary's internal affairs office interviewed Cornell concerning a suspected violation of institutional rules. Specifically, the officers were investigating allegations that Correctional Officer Harold Kropp had violated multiple rules prohibiting particular transactions between prison employees and inmates or members of inmates' families. At the interview, Major Harry A. Grabowski, the head of the internal affairs division, promised Cornell immunity from discipline if the inmate would cooperate in the investigation. While Major Grabowski did not possess independent authority to offer a prisoner exemption from punishment, he claims that Deputy Warden John Henry, now deceased, granted permission to extend immunity to Cornell. In response to Major Grabowski's pledge, Cornell admitted that he and Officer Kropp had contracted for the officer to construct a fence surrounding a house owned by Cornell's wife.

Four days after his conversation with Cornell, Major Grabowski questioned Kropp and informed the officer of the ongoing investigation and of the allegations against him. Correctional Officer Charles Wood, Kropp's union steward, was also present when Major Grabowski questioned Kropp. The internal affairs investigation culminated approximately three weeks later with Officer Kropp's compelled resignation from his employment with the ISP. With Officer Wood's assistance, Officer Kropp unsuccessfully attempted to obtain reinstatement through various grievance procedures outlined in the relevant union contract.

On October 26, 1987, subsequent to Kropp's resignation, Officer Wood prepared a disciplinary report alleging that Cornell had violated the institutional rule prohibiting contracts between inmates and employees. Deputy Warden Henry, notwithstanding the permission he had allegedly given Major Grabowski to grant Cornell immunity from punishment, determined that the report justified immediate disciplinary action and ordered Cornell's transfer from the medium security prison to ISP. Deputy Warden Henry apparently denied that he had authorized the immunity and refused, following several meetings with Cornell, to dismiss the charge.

Cornell thereafter initiated an administrative appeal in an attempt to obtain dismissal of the disciplinary report. As part of the process, Charles Harper presided over a three person committee that conducted a disciplinary hearing addressing Officer Wood's report. At the hearing, Cornell informed the committee of his promised immunity; additionally, Major Grabowski submitted a statement on Cornell's behalf confirming that he had granted the prisoner exemption from retribution. Despite this evidence, the committee determined that Cornell had violated the institutional rule and sentenced him to ten days of disciplinary detention, sixty days of administrative segregation, and loss of sixteen days of good time.

Cornell continued to utilize the administrative process and pursued further unsuccessful appeals to Ron Welder, Executive Assis-

---

2. To qualify for transfer to a less secure facility, a life term inmate at ISP must serve at least ten years within the maximum security prison, with at least the preceding two years as an honor lifer, and must not have received a major discipline report during that two year period.

3. The district judge determined that, as far as many inmates are concerned, transfer to JBCC is considered a reward for outstanding behavior because of the more relaxed environment, increased comfort, and greater opportunity for leisure activity at that facility. Also, prisoners generally view transfer from JBCC to ISP as a punishment that most often occurs as a result of inmate misconduct.

tant to the Warden, and Ken Wittry, another ISP employee. Cornell submitted a final appeal to Paul Grossheim, the acting director of the Iowa Department of Corrections. On December 30, 1987, Director Grossheim dismissed the disciplinary report and ordered that Cornell's record be expunged. Cornell was returned to JBCC on January 22, 1988, and the additional sanctions imposed by the disciplinary committee were never levied against him. At the time of his return to JBCC, Cornell had spent 89 days inside the maximum security prison facility.

Cornell later filed this 42 U.S.C. § 1983 action against, among others, various prison officials mentioned above. Cornell's complaint essentially alleged that the state actors engaged in three types of unconstitutional conduct: retaliatory transfer, retaliatory discipline, and violation of Cornell's due process rights. Following a two day bench trial, the district judge refused to grant qualified immunity to the prison officials. Further, the district court found that the inmate had established he would not have been returned to the maximum security prison but for an unconstitutional retaliatory motive. In particular, the court found that prison authorities impermissibly transferred Cornell based on the prisoner's exercise of his First Amendment rights in talking to and cooperating with Major Grabowski. Consequently, Cornell prevailed at trial on his claim of retaliatory transfer.

The district court also decided that Cornell's transfer constituted retaliatory discipline. Largely because the additional sanctions ordered by the discipline committee were never imposed on Cornell, however, the court determined that Cornell did not state a viable retaliatory discipline claim for the punishment mandated after the disciplinary hearing. Finally, the district judge found in Cornell's favor on the due process claim.

The district judge ordered the prison officials to reimburse Cornell for his actual damages of $2,163.67, but the court refused to impose punitive damages. The district judge also asked Cornell's court appointed attorney to submit an application for attorney's fees to be paid by the prison officials. After the court, in response to defense objections, reduced the requested amount by $9,136.50, it ordered the officials to pay $29,039.00 in legal fees.

The prison officials timely appealed to this court. They assert that the district court committed error by: denying them qualified immunity; finding that they had impermissibly engaged in retaliatory discharge and retaliatory punishment; finding that Cornell was deprived of liberty without due process of the law; and awarding excessive attorney's fees. Cornell also presents to this court a cross-appeal in which he alleges that the district court: mistakenly found as nonretaliatory the sanctions ordered against him by the disciplinary committee; and erroneously declined to impose punitive damages against the prison officials. We consider these arguments below.

## II. DISCUSSION

### A. Retaliatory Transfer

■■■■■ It is certainly true, as the prison officials assert, that generally " 'a prisoner enjoys no constitutional right to remain in a particular institution....' " *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir.1993) (quoting *Murphy v. Missouri Dep't of Correction*, 769 F.2d 502, 503 (8th Cir.1985)), *cert. denied*, —— U.S. ——, 114 S.Ct. 2684, 129 L.Ed.2d 817 (1994). In fact, prison administrators may ordinarily transfer a prisoner " 'for whatever reason or for no reason at all....' " *Id.* (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983)). Still, these precepts are limited by the prohibition against transferring a prisoner in retaliation for the inmate's exercise of a constitutional right.[4] *Id.* (citing *Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir.1991)). To prevail on a claim of retaliatory transfer, the prisoner must show that impermissible retali-

---

4. In light of the Supreme Court's recent decision in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), we have reexamined our cases recognizing causes of action for retaliatory transfer and retaliatory discipline. We conclude that those cases remain good law. *See Pratt v. Rowland*, 65 F.3d 802, 806–07 (9th Cir.1995) (determining that *Sandin* does not require abrogation of retaliation causes of action).

ation was "'the actual motivating factor for his transfer.'" *Id.* (quoting *Murphy,* 769 F.2d at 503 n. 1).

■ As a threshold inquiry, we must determine whether Cornell's exercise of a constitutional right precipitated the alleged retaliatory relocation in this case. In other words, did Cornell have a constitutional right to cooperate with Major Grabowski in the internal prison investigation? The Supreme Court has held that "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1059–60, 92 L.Ed. 1356 (1948)). It is well established, though, that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.*

■ We believe it to be self evident that ordinary citizens enjoy a constitutional privilege to freely participate in governmental investigations.[5] Even public employees, who receive only limited First Amendment protections in the employment context, are constitutionally shielded from employer retaliation for their participation in investigations concerning matters of public concern. *Gorman v. Robinson,* 977 F.2d 350, 356 (7th Cir.1992). Thus, unless the right to cooperate with government investigators is inimical to the standard established by the Supreme Court in *Pell,* it is a right retained by prison inmates.

■ We find that the right to respond to a prison investigator's inquiries is not inconsistent with a person's status as a prisoner or with the legitimate penological objectives of the corrections system. To the contrary, we agree with the district court that truthfully answering questions concerning a misconduct investigation against a correctional officer is "undoubtedly quite consistent with legitimate

penological objectives." Consequently, we conclude under the facts of this case that Cornell's activity implicated his rights under the First Amendment. *Cf. Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988) (finding that a prisoner has a constitutional right to cooperate with a state administrative investigation of alleged incidents of inmate abuse).

■ The prison officials challenge the district court's finding that impermissible retaliation was "the actual motivating factor" for Cornell's transfer. This is a factual determination that we review for clear error. *See Cox v. Dardanelle Pub. Sch. Dist.,* 790 F.2d 668, 675 (8th Cir.1986). Using the correct test as set forth in *Goff,* 7 F.3d at 738, the district court found that the transfer would not have occurred "but for" the unconstitutional retaliatory motive.

■ Our review of the record reveals ample evidence to support the district court's decision. Officer Wood, the correctional officer who filed the report against Cornell, had no first-hand knowledge of the agreement between Cornell and Officer Kropp; Wood only learned of the incident through his representation of Kropp as the officer's union steward. Also, although Wood learned of the prohibited transaction on September 20, 1987, he violated prison procedures by waiting over thirty days, until after Kropp's forced resignation, to file the report. Indeed, Wood took this disciplinary action despite the fact that Major Grabowski had informed him of the grant of immunity to Cornell. After Officer Wood filed the report, prison authorities immediately transferred Cornell to the maximum security facility. This violated a prison guideline which provided that an inmate should normally remain in his existing housing pending the resolution of a disciplinary report. Though the prison officials have at various times claimed that Cornell's transfer was effected to facilitate an investigation of the charges, the district court determined that no investigation took place subsequent to the relocation.

---

**5.** Of course, neither ordinary citizens nor prisoners have an absolute right to provide government investigators with useless or irrelevant information. In this opinion, we merely refer to the

right, after being approached by government investigators, to freely respond to those officials' inquiries concerning the subject matter of the investigation.

Given these facts, we cannot say that the district court committed clear error by deciding that Cornell would not have been transferred but for the unconstitutional retaliatory motive. Because the prison officials retaliated against Cornell for his exercise of a constitutional right, we find that Cornell properly prevailed on his claim for retaliatory transfer.

## B. Retaliatory Discipline

The district court also ruled in Cornell's favor on his claim for retaliatory discipline. "Just as prison officials cannot lawfully transfer a prisoner for retaliatory reasons alone, [they likewise] cannot impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right." *Goff,* 7 F.3d at 738 (citing *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989)). In certain situations, the transfer of a prisoner may constitute "discipline." *See id.* (agreeing with the district court that a prisoner can predicate a retaliatory discipline claim on his transfer to another facility). The district court found that Cornell's transfer in this case was discipline, and the prison officials do not appear to dispute that conclusion.

■ In large measure, our discussion above guides the resolution of this claim. A cause of action for retaliatory discipline, though, differs in at least one important respect from a claim of retaliatory transfer. Namely, " 'if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail.' " *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994) (quoting *Goff,* 7 F.3d at 738), *cert. denied,* —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). " 'While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.' " *Goff,* 7 F.3d at 738 (quoting *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir.1990)). The critical inquiry "is not whether the prisoner alleges that prison officials retaliated against him for participating in constitutionally protected activity, but instead is whether the prison disciplinary committee ultimately found based upon some evidence that the prisoner committed the charged violation of the prison regulations." *Henderson,* 29 F.3d at 469.

■ In this case, because the prison disciplinary committee found based upon some evidence that Cornell violated a prison rule, the prison officials argue that he should not have prevailed on his retaliatory discipline claim. We disagree. Although we reaffirm the sound reasoning represented in our previous decisions, we feel that this case presents a different situation. Here, a high ranking prison official, on whose authority Cornell was entitled to rely, promised the inmate immunity from discipline for the rule violation. In such circumstances, the prison has essentially made a retroactive determination that the prisoner, at the time of the misconduct, was engaged in activity that he was entitled to perform. If the prison thereafter ignores the immunity and uses the rule violation as a pretext to punish the prisoner as retribution for the prisoner's exercise of a constitutional right, it exposes itself to a claim of retaliatory discipline. *Cf. Goff,* 7 F.3d at 738 (explaining that a claim of retaliatory discipline will fail if the prison punished the inmate for acts that he was "not entitled to perform").

■ We believe the district court correctly found that the prison officials, by transferring Cornell because he performed a constitutionally protected activity, impermissibly engaged in retaliatory punishment. We also agree with the district court that the additional penalties the committee levied against Cornell did not constitute retaliatory punishment. The imposition of those sanctions was held in abeyance until the final disposition of Cornell's administrative appeals. The acting director of the Iowa Department of Corrections ultimately expunged the disciplinary report from Cornell's record, and the penalties were never actually imposed upon the prisoner. Therefore, we fail to see how Cornell was in any way disciplined as a result of the committee's action.

## C. Due Process

The prison officials assert that the district court erroneously decided that, by failing to follow certain prison regulations, they violated Cornell's rights under the Due Process Clause of the Fourteenth Amendment.[6] Based on the threadbare record that we have before us, which does not even include a complete copy of the prison regulations, it is impossible for us to determine whether the state-created procedures gave rise to a protectable liberty interest. In any event, our resolution of Cornell's retaliation claims renders this analysis unnecessary. We do mention, however, that because the procedures in question do not appear to be designed to safeguard prisoners against freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, —— U.S. ——, ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), we doubt that they would implicate due process protections.

## D. Qualified Immunity

 The prison officials claim that the district court committed error by refusing to grant them qualified immunity. This is an issue that we review *de novo*. *See Henderson*, 29 F.3d at 467. "Generally, prison officials may rely on the defense of qualified immunity to protect them from liability for civil damages." *Mahers v. Harper*, 12 F.3d 783, 785 (8th Cir.1993) (citing *Brown v. Frey*, 889 F.2d 159, 165 (8th Cir.1989), *cert. denied*, 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990)). Qualified immunity applies unless the officials' conduct violates " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Henderson*, 29 F.3d at 467 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "In order for a person to have a clearly established right, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Mahers*, 12 F.3d at 785 (quoting *Anderson v. Creighton*, 483

U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039 (citation omitted). This analysis "focuses on the objective legal reasonableness of an official's acts." *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739.

 We have long held that prison officials may not permissibly retaliate against a prisoner based on the inmate's exercise of constitutional rights. *See Garland v. Polley*, 594 F.2d 1220, 1222–23 (8th Cir.1979). In addition, as we have discussed above, the Supreme Court has for many years emphasized that prisoners possess certain First Amendment rights. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). It seems to us elementary that a prisoner retains a First Amendment right to respond to questions posed to him by a prison investigator. We believe, in light of the law as it existed when the prison officials engaged in the unconstitutional behavior, that the unlawfulness of their actions should have been apparent to them. *See Murphy v. Missouri Dep't of Correction*, 769 F.2d 502, 503 (8th Cir.1985) ("[P]rison officials do not have the discretion to punish an inmate for exercising his [F]irst [A]mendment rights. . . ."). As a legal matter, it was not objectively reasonable for the officials to punish Cornell because he participated in a prison investigation that resulted in the forced resignation of a prison officer. Therefore, we decide that the district court did not commit error by refusing to grant qualified immunity to the officers.

## E. Attorney's Fees

 The prison officials maintain that the district court awarded Cornell excessive attorney's fees. We review a decision regarding attorney's fees only for an abuse of discretion. *Loggins v. Delo*, 999 F.2d 364,

---

6. "No State shall ... deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

368 (8th Cir.1993). Notably, the district judge carefully examined the attorney's application for fees and reduced by $9,136.50 the initial request for $38,175.50. This represented a reduction of nearly twenty-five percent. Mindful of the wide latitude that district courts have in determining the proper amount to award for legal services, *see Moore v. City of Des Moines, Iowa,* 766 F.2d 343, 345–46 (8th Cir.1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986), we cannot say that the district judge abused his discretion in awarding Cornell $29,039 in attorney's fees.

### F. Punitive Damages

■ Cornell contends that the district court wrongfully refused to impose punitive damages against the prison officials. Punitive damages are appropriate in a 42 U.S.C. § 1983 case " 'when the defendant[s'] conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' " *Walters v. Grossheim,* 990 F.2d 381, 385 (8th Cir.1993) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)). The district court correctly observed that the prison officials' conduct in this case, though certainly not to be commended, did not rise to a level of egregiousness sufficient to justify the imposition of punitive damages. We therefore affirm the district court's decision not to levy punitive damages against the officials.

### III. CONCLUSION

Because we find no reversible error, we affirm the district court's order finding the prison officials liable under 42 U.S.C. § 1983, and awarding inmate Robert A. Cornell $2,163.67 in actual damages and $29,039.00 for attorney's fees.

Affirmed.

