# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-3766

_____

Walter Haynes,                                          *
                                                        *
            Appellee,                                   *
                                                        *    Appeal from the United States
      v.                                                *    District Court for the
                                                        *    Eastern District of Arkansas.
Patrick L. Stephenson, Sgt.,                            *
Maximum Security Unit,                                  *
Arkansas Department of Correction,                      *
in his individual capacity,                             *
                                                        *
            Appellant.                                  *

_____

Submitted: September 25, 2009
      Filed: December 16, 2009

_____

Before MELLOY, GRUENDER and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Walter Haynes, an inmate incarcerated by the Arkansas Department of Corrections ("ADC"), prevailed on a retaliatory discipline claim under 42 U.S.C. § 1983 against Sergeant Patrick Stephenson, an ADC corrections officer. After a bench trial, the district court[1] awarded Haynes $1 in compensatory damages and

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas, adopting the report and recommendation of the

$2,500 in punitive damages. Stephenson appeals, arguing that the district court erred in concluding that Haynes established a prima facie case of retaliatory discipline. He also argues that the punitive damages award violates the Due Process Clause of the Fourteenth Amendment. For the following reasons, we affirm.

## I.    BACKGROUND

On June 22, 2007, Haynes was in the hallway at ADC's Tucker Maximum Security Unit, speaking with Lieutenant L.C. Sipes. Stephenson approached them to tell Lieutenant Sipes that he was wanted on the telephone. Upon noticing Stephenson, Haynes asked Lieutenant Sipes whether Stephenson needed to be part of their conversation. Stephenson felt that Haynes's remark was disrespectful. After Lieutenant Sipes left the conversation to answer the telephone, Stephenson firmly told Haynes never to say anything disrespectful about him again. The next day, Haynes filed a grievance against Stephenson, alleging that Stephenson had cursed at and threatened him. Haynes reported in the grievance that Stephenson said: "I don't ever need you to ask anything or any f**king one about something concerning me. I don't need you saying any f**king thing to me or f**king about me to any S.O.B. . . . If you ever do, I swear you'll live to f**king regret it." ADC regulations prohibit corrections officers from directing "profane or abusive language" toward inmates.

Stephenson learned about Haynes's grievance on June 27, 2007. In response, Stephenson filed a disciplinary report against Haynes, accusing Haynes of violating prison rules by making false statements in the grievance. ADC regulations prohibit corrections officers from filing disciplinary reports against inmates for filing false grievances, and Stephenson had received training about this prohibition.

Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas.

After Stephenson filed the disciplinary report, prison officials placed Haynes on Disciplinary Court Review ("DCR") status, removed him from his cell in Barracks 3, and transferred him to a cell in Barracks 5. While he was assigned to Barracks 5, Haynes retained his personal property but was not permitted to eat his meals in the chow hall or visit the prison library. The following day, prison officials transferred Haynes again, this time to the East Isolation Wing. There, Haynes occupied a hot, humid, mosquito-infested cell, and received reduced shower and exercise privileges. Six days after placing Haynes on DCR status, prison officials summarily dismissed the disciplinary report and returned Haynes to his original cell in Barracks 3. Haynes subsequently filed a retaliatory discipline suit against Stephenson under 42 U.S.C. § 1983.[2] A magistrate judge held a bench trial and issued a recommended disposition, including proposed findings of fact and conclusions of law. *See* Fed. R. Civ. P. 72. The district court adopted the magistrate judge's recommendations in full and ordered Stephenson to pay Haynes $1 in nominal damages and $2,500 in punitive damages. Stephenson appeals.

## II. DISCUSSION

Stephenson first challenges the district court's conclusion that Haynes established a prima facie case of retaliatory discipline. We review the district court's findings of fact for clear error and its legal conclusions de novo. *Lenz v. Wade*, 490 F.3d 991, 994 (8th Cir. 2007). "A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007).

---

[2]Haynes's lawsuit initially named several other ADC employees as co-defendants, but those claims were dismissed before trial.

It is undisputed that Haynes satisfied the first element of the prima facie case because he exercised a constitutionally protected right by filing the grievance against Stephenson. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

Stephenson argues that Haynes did not present sufficient evidence to prove the second element because his placement on DCR status and transfers to different cells did not constitute discipline. We need not determine whether these sanctions constitute discipline because we have held that "the *filing* of a disciplinary charge . . . is actionable under section 1983 if done in retaliation for [the inmate's] having filed a grievance pursuant to established procedures." *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (emphasis added); *see also Bandy-Bey v. Crist*, 578 F.3d 763, 766 (8th Cir. 2009) (per curiam); *Moore v. Plaster*, 266 F.3d 928, 931 (8th Cir. 2001); *Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998) (per curiam). "Because the retaliatory filing of a disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself." *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). An inmate "need not show a separate, independent injury as an element of his case" because "when retaliatory conduct is involved, there is no independent injury requirement." *Id.* at 379-80.

Stephenson cites our decision in *Cornell v. Woods*, 69 F.3d 1383 (8th Cir. 1995), to support his argument that the changed conditions of Haynes's confinement were not part of a punitive sentence and therefore did not constitute discipline. Stephenson's reliance on *Cornell* is misplaced. In *Cornell*, prison officials promised Robert Cornell, an inmate at a medium security prison in Iowa, immunity from punishment for entering into a prohibited contractual relationship with a corrections officer in exchange for his testimony against the officer in an internal investigation. *Id.* at 1386. After Cornell cooperated with the investigation, a corrections officer filed

a disciplinary report against Cornell for violating prison rules by entering the contract. *Id.* As a result, prison officials transferred Cornell to a maximum security prison. *Id.* at 1386. A disciplinary committee later determined that Cornell had violated prison rules and accordingly "sentenced him to ten days of disciplinary detention, sixty days of administrative segregation, and loss of sixteen days of good time." *Id.* Before this sentence took effect, however, the disciplinary charge was dropped and Cornell was transferred back to the medium security prison. *Id.* at 1387. We held that Cornell's transfer was retaliatory but that the disciplinary committee's sentence did not constitute discipline because it was withdrawn before it took effect. *Id.* at 1388-89. *Cornell* does not, as Stephenson argues, hold that an inmate can prevail on a retaliatory discipline claim only if he receives a punitive sentence; nor does it undermine our holding in *Sprouse* that the mere filing of a disciplinary report is actionable if done in retaliation for an inmate's exercise of the right to file a grievance. In this case, there is no dispute that Stephenson filed a disciplinary report against Haynes, so it is unnecessary for us to determine whether the sanctions imposed on Haynes during the pendency of the disciplinary report also amounted to discipline. We must simply determine whether the disciplinary report was, in fact, retaliatory.

To establish the third element of the prima facie case for retaliatory discipline, that exercising the protected right motivated the discipline, an inmate must show that but for a retaliatory motive the prison official would not have filed the disciplinary report. *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). In this case, ADC regulations prohibited Stephenson from filing a disciplinary report against Haynes. Stephenson nevertheless filed the disciplinary report almost immediately after learning of Haynes's grievance. After reciting Haynes's allegations, Stephenson wrote, "I Sgt. Stephenson never said this so *therefore* I'm charging inmate W. Haynes with the following Rule violations." (Emphasis added.) Based on this evidence, we conclude that the district court did not clearly err in finding that Stephenson would not have filed the disciplinary report but for a retaliatory motive. *See Cornell*, 69 F.3d at 1388 (holding that "the district court's finding that impermissible retaliation was the actual

motivating factor" for a disciplinary transfer "is a factual determination that we review for clear error" (internal quotation marks omitted)). Accordingly, we hold that the district court did not err in concluding that Haynes established a prima facie case of retaliatory discipline.

Stephenson also argues that the $2,500 punitive damages award violates the Due Process Clause of the Fourteenth Amendment. We review the constitutionality of a district court's punitive damages award de novo. *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 942 (8th Cir. 2007). In determining whether the punitive damages award violates due process, we consider "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

First, Stephenson argues that his conduct was not reprehensible. The Supreme Court has noted that the reprehensibility of the defendant's conduct is the "most important" of the three guideposts, *id.* at 419 (quoting *Gore*, 517 U.S. at 575), and that it should be measured by considering, among other things, whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident," *id.* The district court found that Stephenson "was *knowingly untruthful* in asserting in the June 27 disciplinary that [Haynes] had made false statements in the June 23 [grievance]" and that his retaliatory conduct was "willful, reckless, and malicious." We review these factual findings for clear error, *see Williams v. Brimeyer*, 116 F.3d 351, 354 (8th Cir. 1997), and review de novo the court's legal conclusion that Stephenson actions were reprehensible, *see Lenz v. Wade*, 490 F.3d 991, 994 (8th Cir. 2007).

In May 2007, approximately six weeks before his encounter with Haynes, Stephenson verbally abused another inmate, Thomas Stephens. Stephenson admitted

to an ADC internal affairs investigator that he "cussed out" and "may have pointed his finger at . . . and physically threatened" Stephens.[3] Stephenson also explained that he would rather "cuss [inmates]" than write disciplinary reports. Stephenson's admissions during the internal investigation of the May 2007 incident contrast sharply with his claim, at trial and in the disciplinary report, that he did not swear at Haynes.[4] At trial, Stephenson specifically testified that he was "quite sure" that he didn't use "the F word" during his conversation with Haynes. When pressed, Stephenson explained that he knew he didn't say "the F word" because he would have said the "MF" word instead. We agree with the district court's assessment that Stephenson's testimony that he did not swear at Haynes "comes dangerously close to outright perjury." The district court's finding that Stephenson was knowingly untruthful in claiming that Haynes lied in the grievance was not clearly erroneous.

The district court also found that Stephenson knew that ADC regulations prohibited him from filing the disciplinary report. Stephenson admitted that he had received training about this prohibition but testified that three prison officials independently told him that filing a disciplinary report was acceptable under the circumstances of this case. This testimony was rebutted by the prison officials he identified, all of whom denied making such statements. In light of this conflicting testimony, the district court did not clearly err in discrediting Stephenson's testimony and finding that he knew filing the disciplinary report against Haynes was prohibited.

---

[3]Stephens reported the following in a grievance dated May 11, 2007: "[Stephenson] tossed his I.D. badge on the floor, said the hell with this job, and said for me to shut my b**ch, punk, f**king a*s up, you f**king coward or I'll beat your white punk a*s up."

[4]We emphasize that the evidence of Stephenson's previous encounter with Stephens is relevant only to determine whether he was knowingly untruthful in denying that he swore at Haynes. *See Philip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007) (holding that the Due Process Clause forbids using a punitive damages award "to punish a defendant for injury that it inflicts upon nonparties").

*See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, . . . that finding, if not internally inconsistent, can virtually never be clear error."). Based on Stephenson's decision to file a knowingly untruthful disciplinary report in deliberate disregard of ADC regulations, we cannot say that the district court erred in finding that Stephenson's retaliation against Haynes was reprehensible.

Second, Stephenson argues that the 2500:1 ratio of punitive to economic damages is unconstitutional, pointing to the Supreme Court's suggestion in *State Farm* that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." 538 U.S. at 425. Stephenson acknowledges that a higher ratio "may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages,'" *id.* (quoting *Gore*, 517 U.S. at 582), but he argues that his actions were not "particularly egregious." Although this presents a close case, we conclude that Stephenson's conduct, in light of his experience and training, was sufficiently egregious to sustain the punitive damages award here. Stephenson filed an untruthful disciplinary report in retaliation for Haynes's exercise of a constitutionally protected right. Moreover, Stephenson knew that under the circumstances any such report—truthful or not—was prohibited by ADC regulations, but he filed it nonetheless. Because Stephenson's actions resulted in only nominal compensatory damages, the district court did not err in concluding that the high ratio of punitive to compensatory damages awarded did not offend due process. *Cf. JCB, Inc. v. Union Planters Bank*, *NA*, 539 F.3d 862, 877 (8th Cir. 2008) (awarding more than $100,000 in punitive damages on a trespass claim where the compensatory damages award was $1).[5]

---

[5]Stephenson argues that several of our prior cases support his argument that the ratio of punitive to economic damages in this case is unconstitutionally high, but the cases he cites are inapposite and do not change our analysis.

The third "guidepost" we consider is "the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418. Although *Gore* establishes that reviewing courts should "accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue," 517 U.S. at 583 (internal quotation marks omitted) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301 (1989) (O'Connor, J., concurring in part and dissenting in part)), this guidepost "has no application here, as neither party could direct the lower court to . . . civil[] or criminal penalties" that Stephenson could face for his conduct. *See Asa-Brandt, Inc. v. ADM Investor Servs., Inc.*, 344 F.3d 738, 747 n.16 (8th Cir. 2003).

The evidence shows that Stephenson engaged in willful, malicious and deceitful conduct, which caused Haynes to suffer nominal economic damages. We cannot say that the $2,500 punitive damages award violates the Due Process Clause of the Fourteenth Amendment.[6]

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[6]Stephenson also argues that even if the punitive damages award is constitutional, the district court abused its discretion in setting the award at $2,500. To the extent that this second level of review is necessary, *compare Conseco Fin. Servicing Corp. v. N. Am. Mortgage Co.*, 381 F.3d 811, 823 (8th Cir. 2004), *with Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 435-36 (2001), we conclude that the district court did not abuse its discretion.