# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2164

_____

Anthony D. Lamar

*Plaintiff - Appellant*

v.

Dexter Payne, Director, Arkansas Department of Correction; Randy Straughn, Major, Varner Unit, ADC; James Gibson, Superintendent,/Head Warden, Varner Unit, ADC; Yolanda Linsy[1], Captain, Varner Unit, ADC; James Shipman, Deputy Warden over Security, Varner Supermax, ADC; Flora Washington, Classification Officer, Varner Unit, ADC

*Defendants - Appellees*

Tiffany Moore, Nurse; Does, Mental Health Counselor, ADC Commissary and Policy Management Team

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: April 9, 2024
Filed: August 5, 2024

_____

---

[1]The district court caption incorrectly identifies Yolanda Linsy as Yolanda Linsey. This caption has been amended to reflect the proper spelling.

Before LOKEN, SHEPHERD, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Anthony Lamar, an inmate in the Arkansas Department of Corrections (ADC), filed a pro se 42 U.S.C. § 1983 action alleging, as relevant to this appeal, that several ADC employees (Defendants) retaliated against him for exercising his First Amendment rights by filing a grievance, circulating a memorandum encouraging other inmates to file grievances challenging a new administrative directive, and threatening a lawsuit. The district court granted summary judgment in Defendants' favor, concluding that they had valid and non-retaliatory reasons for taking disciplinary actions against Lamar because he violated prison rules. The district court also denied Lamar's request for an extension of time to file a summary judgment motion after he missed the deadline for dispositive motions. Lamar appeals, and, having jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court's grant of summary judgment but affirm its denial of Lamar's request for an extension of time.

I.

Lamar initially filed this pro se action as a class action, asserting claims on behalf of himself and other similarly situated ADC inmates that a new ADC administrative directive violated their First Amendment rights. Lamar also brought additional claims on his behalf only, alleging that various ADC employees retaliated against him for exercising his First Amendment rights. Lamar's claims stem from the implementation of ADC Administrative Directive 17-23, which was enacted to combat the increasing use of illegal drugs within the ADC, and, as relevant here, imposed a three-page limit for all non-privileged correspondence between ADC inmates and non-incarcerated individuals. This Administrative Directive went into effect on August 21, 2017, but the ADC notified its inmates via written notice of the changes to the inmate-correspondence policy prior to the effective date. At the time

of the enactment of Administrative Directive 17-23, Lamar was an inmate at the Varner Unit, an ADC facility in Grady, Arkansas.

Lamar learned of the new Administrative Directive through the notices the ADC placed throughout the facility, and, once it went into effect, he filed a grievance challenging the policy. Separate from his challenge to the Administrative Directive, Lamar filed an unrelated grievance on August 6, 2017, which he asked Yolanda Linsy, then-Lieutenant at the Varner Unit, to sign. Lamar alleges that Linsy refused to sign his grievance, leading him to file a grievance against her for her refusal to sign. Lamar also circulated a memorandum, dated August 25, 2017, which encouraged all inmates to file grievances asserting that Administrative Directive 17-23 violated the inmates' First Amendment Rights. The memorandum, which used ADC letterhead that had been altered to read "Inter-Prison Communication" rather than Inter-Office Communication, stated, in type-written form:

> I need your help in getting this new Mail Policy, AD 17-23, done away with. I need for EVERYONE to file a grievance, saying AD 17-23 is unconstitutional. [A] violation of your First Amendment Rights under the Free Speech clause of the U.S. Constitution. . . . I need you all to file these grievances by no later than September 5, 2017 and send these grievances up through every level. . . . If you don't know how to write a grievance, then come to me and I will write it for you to get signed. Free-of-Charge. If you have any questions on how to get your grievances sent to Central Office after Warden Gibson sends you his . . . response, then come to me and I will take care of it. I need EVERYONE to go to the Law Library, get some "AFFIDAVIT" forms, explain on it how AD 17-23 is violating your rights to get mail from those on the outside world, how this Policy violates your rights . . . . I Will file this Lawsuit on my own and win it for us using these grievances and affidavits that you all send to me after you send the grievances through all levels and after you all get those affidavits notarized and sent to me. . . . I need you all's help men. The more fully exhausted grievances and notarized affidavits with your name and ADC numbers on them that I get, the better my chances become at winning this Lawsuit. Getting it certified as a Class-Action Lawsuit, and getting this highly unconstitutional mail Policy abolished

permanently. . . . We're all we got. So let's work together to stop this Policy.

At the bottom of the page, Lamar wrote in his own handwriting, "'Peacefully United we stand, Divided we shall fall.' If we don't stand for something, then we will fall for anything. Let's stand Peacefully." The memorandum also included Lamar's full name and prison identification number. Lamar made copies of the memorandum using the legal mail process and posted the copies in the facility's barracks.

On August 30, 2017, Linsy issued a written charge of a rule violation to Lamar. In her written report, Linsy stated that she had been assigned to investigate an incident involving Lamar and his use of "state property to manufacture a direct involvement in writing, circulating or signing a petition, letter, or similar declaration that poses a threat to the security of the facility." Linsy further stated that evidence had been provided showing that the ADC Inter-Office Communication letterhead had been used and had been altered to read "Inter-Prison Communication," and she charged Lamar with rule violations because the letter "was discovered to have [been] generated using a computer in the Library [and] encouraged the Inmate population to band together in order to disrupt unit operation by filing grievances against the mail policy AD 17-23." The specific rule violations that Linsy alleged occurred were "direct involvement in writing, circulating or signing a petition, letter, or similar declaration that poses a threat to the security of the facility," "[f]ailure to obey verbal and/or written order(s) of staff," "[u]nauthorized use of state property/supplies," and "[a]sking, coercing or offering inducement to anyone to violate Department policy or procedure, inmate rules and regulations, center/unit operating procedures."

On the same day that Linsy issued the written charge of a rule violation, ADC officials placed Lamar in isolation despite having had a previously scheduled classification hearing that same day, where he was promoted from a more restrictive Class IV status to a less restrictive Class III status. He remained there for two to three days before officials transferred him to administrative segregation at the Varner Supermax Unit. Less than a week later, a classification review committee held a hearing and decided to keep Lamar in restrictive housing, noting his pending

-4-

charge of a rule violation. However, on September 11, 2017, Linsy's disciplinary charges against Lamar were dismissed on procedural grounds because the charging document did not contain the proper information regarding the beginning and end of the investigation. On September 14, 2017, the classification committee held another hearing on Lamar's classification. At this meeting, Lamar threatened to sue Defendants if they did not release him from administrative segregation because he believed he was being retaliated against for exercising his First Amendment rights and encouraging other inmates to do the same. An exchange between Lamar and Warden James Gibson brought the meeting to an end, and the committee thereafter voted to keep Lamar in restrictive housing. Lamar was released from administrative segregation on September 20, 2017, for the stated reason that more space was needed for other inmates. He then filed suit, alleging that Defendants retaliated against him by giving him a written charge of a rule violation and placing him in isolation and administrative segregation because he circulated the memorandum encouraging other inmates to file grievances, threatened to sue ADC officials, and filed a grievance against Linsy.

Defendants moved for summary judgment on Lamar's claims, after which Lamar filed a motion for an extension of time to respond to Defendants' motion and to file his own motion for summary judgment. A magistrate judge granted the motion insofar as it sought an extension to respond to Defendants' motion but denied it as to Lamar's request for an extension of time to file his own summary judgment motion, stating that the deadline for dispositive motions had passed and that Lamar failed to show good cause for extending the deadline. The magistrate judge rejected Lamar's argument that he needed an extension of time to file his own motion because Defendants had intentionally withheld a copy of his deposition transcript, noting that Defendants were not obligated to provide him with a copy before filing their summary judgment motion and that Lamar could have filed his own motion for summary judgment relying on a sworn affidavit instead of his deposition testimony. Finally, the magistrate judge noted that it had already granted the parties an extension of time to file dispositive motions and, in granting that extension, stressed that further extensions of time were unlikely to be granted given that the case was

nearly three years old at that point and dispositive motions had yet to be filed. Lamar appealed this ruling to the district court, which concluded that the magistrate judge's decision was not clearly erroneous or contrary to the law.

Lamar filed a response to Defendants' motion, stating that he was no longer pursuing his constitutional challenge to the policy and his retaliation claim against one defendant, Randy Straughn. However, Lamar continued to pursue retaliation claims against the remaining Defendants. Specifically, Lamar continued to pursue his claim against Linsy that she retaliated against him for filing a grievance against her by issuing him a written charge of a rule violation related to the circulation of the memorandum and his claim that Defendants retaliated against him for circulating the memorandum and threatening to sue Defendants by putting him in or keeping him in isolation or administrative segregation.

The magistrate judge issued a report and recommendation recommending that the district court grant Defendants' summary judgment motion. The report and recommendation first determined that Linsy was entitled to summary judgment on Lamar's retaliation claim against her, concluding that the record contained evidence that Lamar had committed a rules violation by circulating the memorandum encouraging other inmates to file grievances about the new administrative directive and by using state property to create the memorandum, relying on statements Lamar made during his deposition in relation to this action. Because there was evidence of a rule violation, the magistrate judge determined that Lamar could not show that Linsy retaliated against him, relying on case law dictating that a written charge of a rule violation cannot be retaliatory if it is issued for violation of prison rules and that a defendant can prevail on a retaliation claim by showing "some evidence" of a violation of a prison rule. The magistrate judge similarly recommended that Defendants be granted summary judgment on Lamar's retaliation claim stemming from ADC officials' decision to place him in isolation or administrative segregation. The magistrate judge concluded that because Lamar's circulation of the memorandum was a violation of prison rules, it was not protected activity, and, even though Lamar's written charge of a rule violation was dismissed on procedural

grounds, Defendants did not retaliate against him by keeping him in administrative segregation after its dismissal because "it is undisputed that [Lamar] was guilty of violating prison rules as charged." The district court adopted the magistrate judge's recommended disposition in full and without additional comment, entering summary judgment in favor of Defendants and dismissing Lamar's claims with prejudice. Lamar now appeals, asserting that the district court erred in granting summary judgment to Defendants and in denying him an extension of time to file his own summary judgment motion.

## II.

Lamar first asserts that the district court erred in granting summary judgment to Defendants on his retaliation claims, arguing that the district court erroneously relied on a written charge of a rule violation that was dismissed on procedural grounds and testimony from Lamar's deposition—taken four years after the incidents relevant to this case—to conclude that there was "some evidence" that Lamar violated prison rules.[2] "'We review de novo a district court's grant of summary judgment.' Summary judgment is proper only if 'there is no genuine issue as to any material fact' and 'the moving party is entitled to judgment as a matter of law.'" Avenoso v. Reliance Standard Life Ins. Co., 19 F.4th 1020, 1024 (8th Cir. 2021) (citation omitted).

"'The First Amendment prohibits laws "abridging the freedom of speech."' Thus, 'as "a general matter,"' the First Amendment 'prohibits government officials from subjecting individuals to "retaliatory actions" after the fact for having engaged

---

[2]Defendants assert that we need not reach the merits of Lamar's appeal, arguing that "this Court 'cannot tell whether the district court erred in a ruling' because Lamar did not 'direct [the Court] to a place in the record' where the alleged error can be found." Given that we liberally construe pro se filings, see Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004), and that Lamar clearly stated the basis for his argument that the district court erred, we reject Defendants' contention that, because Lamar did not include specific record citations, we should not address the merits of his appeal.

in protected speech.'" Aldridge v. City of St. Louis, 75 F.4th 895, 898 (8th Cir. 2023) (citations omitted). A plaintiff alleging a § 1983 First Amendment retaliation claim must show: "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013).

The parties do not dispute that Lamar engaged in protected conduct by filing a grievance and threatening to sue Defendants. See Spencer v. Jackson Cnty., 738 F.3d 907, 913 (8th Cir. 2013) ("Filing a prison grievance has long been 'protected First Amendment activity'. . . ."); Haynes v. Stephenson, 588 F.3d 1152, 1155-56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." (citation omitted)); Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) ("'[T]he applicability of the constitutional right to redress of grievances does not hinge on the label the prison places on a particular complaint,' and embraces threats to sue." (citation omitted)). We also conclude that Lamar's circulation of the memorandum encouraging inmates to file grievances is protected conduct. This Court has permitted a prison to suppress petitions or otherwise limit an inmate's efforts to encourage other inmates to use the prison grievance process, but only where the activity created a security concern for the prison facility, implicitly recognizing that, without a security concern, this activity is protected conduct. See Nickens v. White, 622 F.2d 967, 970-71 (8th Cir. 1980) (holding that prison's suppression of prisoners' group petition was justified based on reasonable security concerns "despite the evident restriction of appellant's right to freedom of expression"); Rouse v. Benson, 193 F.3d 936, 941 (8th Cir. 1999) (citing Nickens for proposition that there is no constitutional right to incite other inmates to file grievances but acknowledging that restrictions on such conduct are based on reasonable security concerns). Here, construing the facts in the light most favorable to Lamar, as we must, there is insufficient evidence to demonstrate that Lamar's circulation of the memorandum created a security concern; the only evidence suggesting that a security concern existed was Linsy's characterization of

the memorandum in the written charge of a rule violation as "encourag[ing] the Inmate population to band together in order to disrupt unit operation." In contrast, the language of the memorandum urging the inmates to "peacefully" band together to challenge the administrative directive suggests that Lamar did not intend to disrupt the unit's operation. Without further record evidence demonstrating a threat to prison security, on the record before us, we conclude that Lamar's circulation of the petition falls within the ambit of conduct protected by the First Amendment.

Lamar has likewise shown that he suffered an adverse action in the form of a written charge of a rule violation and being placed in isolation or administrative segregation because a reasonable jury could conclude that being placed in segregated housing or being subject to additional disciplinary actions would "chill a person of ordinary firmness" from engaging in the First Amendment conduct Lamar engaged in. Santiago, 707 F.3d at 991; see also Nelson v. Shuffman, 603 F.3d 439, 450 (8th Cir. 2010) (finding an adverse action where plaintiff detainee was placed in isolation without access to mail, family, recreation, and phone calls).

Turning to the final element, whether the adverse action was motivated at least in part by Lamar's protected conduct, the record shows that Lamar received a written charge of a rule violation specifically related to his circulation of the memorandum, that he was placed in isolation the same day as his classification hearing, at which it was recommended that he be placed in a lower classification, that he was kept in administrative segregation after his written charge was dismissed on procedural grounds, and that there is a close temporal proximity between Lamar's protected conduct and the complained-of adverse actions. When construing the evidence in the light most favorable to Lamar, a reasonable jury could conclude that Defendants were at least partially motivated by Lamar's protected conduct in taking the adverse actions against him.

We note, however, that while "'[a] prisoner has a cause of action when the prisoner alleges that prison officials filed disciplinary charges based upon false allegations against the prisoner in retaliation for the prisoner's participation in

grievances against prison officials' . . . 'claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule.'" Santiago, 707 F.3d at 993 (citations omitted). Further, Defendants "may successfully defend a retaliatory discipline claim by showing 'some evidence' [that Lamar] actually committed a rule violation." Id. (citation omitted). To demonstrate "some evidence" of a rule violation, Defendants may rely on "a report from a correctional officer, even if disputed by [Lamar] and supported by no other evidence . . . if the violation is found by an impartial decision maker." Id. (citation omitted).

Here, it is undisputed that Linsy issued a written charge of a rule violation to Lamar based on his circulation of the memorandum. However, as Lamar notes, that written charge was undisputedly dismissed on procedural grounds; because no impartial decision-maker reviewed the violation, it cannot serve as "some evidence" of a violation of a prison rule. The district court thus erred in relying on the written charge as evidence of Lamar's violation of prison rules. So too did the district court err in relying on Lamar's admissions during his deposition, four years after the incident, that he violated prison rules by circulating the memorandum. Lamar's opinions, given years later, are irrelevant to the question of whether Linsy issued the written charge for a violation of a prison rule because they were not known to Linsy at the time of the charge. Therefore, they cannot have formed any part of her motivation in issuing the charge. Because there is no other record evidence to satisfy the "some evidence" standard, the district court erred in granting summary judgment to Defendants on this basis.

III.

Lamar also asserts that the magistrate judge erred when it denied his motion for an extension of time to file a motion for summary judgment. Lamar argues that Defendants' attorneys deliberately withheld the transcript of his deposition—which he needed to be able to properly prepare a summary judgment motion—until the deadline passed. We review the denial of a motion to extend the time for filing a

dispositive motion for an abuse of discretion. See Patterson v. Kelley, 902 F.3d 845, 850 (8th Cir. 2018). The magistrate judge did not abuse his discretion in denying Lamar an extension of time, particularly given that it was the second extension Lamar requested and the district court, in granting the original extension to both parties, expressly stated that future extensions were unlikely due to the age of the case. In denying Lamar's request for a second extension of time, the magistrate judge stated:

> The deadline for filing motions for summary judgment has expired, and Plaintiff fails to make a showing of good cause for extending it at this point. The fact that he didn't receive a copy of his deposition transcript until September 18, 2021 fails to explain why he didn't file a motion for summary judgment or seek an extension of time to do so earlier. First, Defendants were not obligated to provide him with a copy of his deposition transcript until they attached it to the summary judgment motion filed on September 16, 2021. Second, Plaintiff did not need his deposition transcript to file a motion for summary judgment because he could have included a sworn affidavit in support of the motion. Third, the Court has repeatedly stressed that due to the age of this case, it was unlikely that any further extensions would be granted. See Text Orders 94, 97. For all of these reasons, the Court denies Plaintiff's motion to allow him a sixty-day extension to file a motion for summary judgment.

Lamar does not challenge any of the reasons given by the magistrate judge; he merely disagrees with the reasoned decision to deny him an extension of time. On this record, we find no abuse of discretion in that decision. See Grandson v. Univ. of Minn., 272 F.3d 568, 574 (8th Cir. 2001) (concluding that the district court acted "well within its discretion" in denying motion for an extension of time to file dispositive motions because plaintiffs "had 'no credible excuse'" for not filing the motion before the deadline or seeking an extension of time before the deadline lapsed (citation omitted)).

## IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment but affirm the denial of Lamar's motion for an extension of time to file a summary judgment motion. We also grant Lamar's motion to file a supplemental brief and addendum.

_____