# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-2192

_____

Khalifah Abd-al Mubaymin Faruq

*Plaintiff - Appellant*

v.

Leon Vickers, Medical Administrator of CMS at Jefferson City Correctional Center

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: March 18, 2013
Filed: August 5, 2013
[Unpublished]

_____

Before MURPHY, SMITH, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Khalifah Abd-al Mubaymin Faruq appeals the district court's adverse grant of summary judgment on his 42 U.S.C. § 1983 action. Faruq sought damages and injunctive relief against Leon Vickers, a Correctional Medical Services (CMS) nurse administrator. Faruq alleged that Vickers had acted with deliberate indifference to his medical needs by confiscating orthotic devices which had been prescribed by a

physician for his unstable knees; as a result he is severely inhibited in his ability to function in prison and has suffered constant pain from bone, ligament, and tendon misalignment. Upon de novo review and viewing the evidence and all reasonable inferences in the light most favorable to Faruq, see Mason v. Corr. Med. Servs., Inc., 559 F.3d 880, 884–85 (8th Cir. 2009), we conclude that Faruq has raised genuine issues of material fact as to whether Vickers exhibited deliberate indifference to his medical needs.

To prevail on his Eighth Amendment claim, Faruq must show that (1) he suffered from an objectively serious medical need and (2) Vickers knew of, but deliberately disregarded, that need. See Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011). With respect to the first element, Vickers does not dispute that Faruq's medical need was serious. Faruq had been medically prescribed bilateral orthotic devices or braces after undergoing surgery on his left knee and injuring his right knee. He was told he would need the braces permanently and had previously worn them for two years in the prison's general population and in administrative segregation.

As to the second element of Faruq's claim, he need not prove that Vickers "purposefully caus[ed] or knowingly br[ought] about a substantial risk of serious harm." Schaub, 638 F.3d at 915. He need only prove that Vickers acted with a state of mind "equivalent to criminal-law recklessness," id. (citing Lenz v. Wade, 490 F.3d 991, 995 (8th Cir. 2007)), which may be inferred from circumstantial evidence. Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 842–43 & n.8 (1994)). In Sanchez we concluded that "fail[ure] to inquire" appropriately into a prisoner's medical condition may provide evidence of deliberate indifference sufficient to survive summary judgment. Sanchez, 144 F.3d at 1156. Similarly here, we conclude that the record viewed favorably to Faruq is sufficient to raise a genuine issue of fact as to whether Vickers deliberately disregarded electronic medical records confirming that Faruq had medical approval

-2-

to use the braces. See Pool v. Sebastian Cnty., Ark., 418 F.3d 934, 942 (8th Cir. 2005).

Faruq's braces were initially seized by custody officials in October or November 2008. Faruq complained of his resulting injuries to prison medical staff who informed him in early December that the seizure of his braces was "a custody issue." Later, a prison medical official requested the return of the braces "unless there are restrictions due to beng [sic] in [administrative segregation]," but the braces were not returned. Subsequent entries in Faruq's electronic medical records appear to show confusion over the location of Faruq's braces. One entry states, "What happened to the knee braces? Can they be found?" The next entry follows, "Allegedly custody removed them and I assume that is where they are." The braces were eventually returned to Faruq at the direction of a nurse, but custody officials reconfiscated them the same day after conferring with Vickers, who stated that Faruq had not been medically approved for them.

Vickers claims that he determined Faruq was not approved for the braces after reviewing three electronic medical record entries from December 23 and 31. He maintains that he interpreted the December 23 entry to "note[] [Faruq's] non-approval" for the braces, but the key language on which he claims to have relied was entered January 7, the very day he determined that Faruq lacked approval for the braces. It is unclear from the record whether this language was entered before or after Vickers made his determination. Viewing the record in the light most favorable to Faruq, see Mason, 559 F.3d at 884, a reasonable inference can be drawn that the language was added afterward, perhaps even based on Vickers' determination. Prior to Vickers' determination, Faruq had never been denied approval, and after each of his visits medical staff had requested that the braces be returned to him.[1]

_____

[1]The dissent disputes this point, but it misreads the record. The key language bears a date stamp reading "20090107," meaning January 7, 2009. This is the same

Similarly, while Vickers attested that he interpreted a doctor's December 23 entry as not having approved Faruq's braces, that entry stated that the braces should be returned to Faruq unless they were restricted due to his placement in administrative segregation, i.e., for security reasons. The physician's entry thus appears on its face to indicate that Faruq had <u>medical</u> approval for the braces which was contingent only on concerns of security. There is also no indication that Vickers attempted to determine whether Faruq had been approved for the braces after he received letters from Faruq on January 13 and February 18 providing the dates when the physician had recommended and approved the braces and identifying the doctors involved. The electronic medical records contained entries confirming the content of Faruq's letters.

In such circumstances, the district court should not have granted summary judgment where genuine issues of material fact remained. <u>See</u> <u>Sanchez</u>, 144 F.3d at 1157. Accordingly, we deny Faruq's motion to expand the record, reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.

COLLOTON, Circuit Judge, dissenting.

The district court went the extra mile to allow Khalifah Faruq an opportunity to demonstrate a submissible case of deliberate indifference to his serious medical needs by nurse administrator Leon Vickers of Correctional Medical Services. The court denied Vickers's first motion for summary judgment in December 2010, because the court had questions about Vickers's mental state. When Faruq failed to present evidence supporting a reasonable inference that Vickers acted with deliberate

---

day Vickers reviewed Faruq's medical records. If as Vickers stipulates "there were <u>no</u> entries for that date" when he conducted his review, he could not have relied on that language in making his determination.

-4-

indifference, however, the district court properly granted summary judgment in April 2012.

Faruq's claim is that Vickers violated Faruq's rights under the Eighth Amendment, as incorporated by the Fourteenth, because Vickers was deliberately indifferent to a serious medical need. *See Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam). To establish deliberate indifference, a plaintiff must show that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An official's "failure to alleviate a significant risk that he should have perceived but did not" is insufficient to show a violation of the Eighth Amendment. *Id*. at 838. It also is not enough to show "that a reasonable person would have known, or that the defendant should have known" about a serious medical need and then disregarded it. *Id*. at 843 n.8.

In this case, there is no dispute about Faruq's medical need. The issue is whether Vickers acted with a culpable mental state—*i.e.*, deliberate indifference, which means recklessness of the type typically recognized in the criminal law. *Id*. at 837.

On January 7, 2009, Faruq was an inmate in administrative segregation at the Jefferson City Correctional Center. Sergeant Galbreath of the Missouri Department of Corrections asked Vickers by telephone whether Faruq had an "active pass" to use knee braces. Vickers said he would check Faruq's electronic medical records and return the call. Vickers reviewed the three most recent entries in Faruq's record—one dated December 23, 2008, and two dated December 31, 2008. After concluding that none of these entries approved Faruq's use of knee braces, Vickers conveyed that information to Galbreath within an hour of their first conversation. Galbreath then

removed Faruq's knee braces from his cell and returned them to the medical department of the facility.

The majority says that a jury could find that Vickers was deliberately indifferent, because "the key language on which he claims to have relied was entered January 7, the very day he determined that Faruq lacked approval for the braces." *Ante*, at 3. According to the majority, "[i]t is unclear from the record whether this language was entered before or after Vickers made his determination." *Id*.

This rationale for reversal is unfair to Vickers and the district court. As the district court explained, it is *undisputed* that when Vickers consulted the electronic medical records on January 7, "there were no entries for that date" in the records. R. Doc. 222, ¶ 18; R. Doc. 225, ¶ 15 ("As to items 18 thru 22 Plaintiff admits."). Faruq admitted that Vickers "relied upon three entries: one entry dated December 23, 2008; and two entries dated December 31, 2008, one entered at 10:45 a.m. ('104514') and one indicated for 10:54 a.m." R. Doc. 222 ¶ 21; R. Doc. 225, ¶ 15 ("As to items 18 thru 22 Plaintiff admits."). As for the "key language," Vickers explained that the entry by Dr. Harry Haas for December 23, 2008, stated in part: "Wearing knee braces, put in Ad. Seg. and they were taken. . . . Request giving knee braces unless there are restrictions due to beng [sic] in Ad. Seg.," and included the notation "Approved N." R. Doc. 222, ¶ 22. It is clear from the record that this language was added before Vickers made his determination: Faruq admitted that the December 23 entry that Vickers reviewed included the language cited by Vickers. R. Doc. 222, ¶ 22; R. Doc. 225, ¶ 15 ("As to items 18 thru 22 Plaintiff admits."). The majority's assertion that the language could have been added later is contrary to the undisputed facts.[2]

---

[2]The majority curiously asserts that the "key language bears a date stamp reading '20090107,' meaning January 7, 2009." *Ante*, at 3 n.1. None of the language quoted above "bears a date stamp reading '20090107.'" *See* R. Doc. 222-6; R. Doc. 225-1, at 18. (The only language bearing that date stamp is not at issue: "Unable to

The majority next contends that Vickers exhibited deliberate indifference by misinterpreting Dr. Haas's entry in the medical records. Vickers averred that he interpreted this entry to mean that "since Dr. Haas was *requesting* approval for [Faruq] to be issued his knee braces, [Faruq] did not have an active pass for his braces; and that the notation 'Approved N' indicated that [Faruq] was <u>not</u> approved for knee braces by Dr. Haas." R. Doc. 222-2, ¶ 26. Nurse Beth Clad also considered the December 23 entry; she averred, "Based upon my experience as a nurse employed by CMS, I interpret this entry as meaning that the notation 'Approved N' indicates that [Faruq] was not approved by Dr. Haas for knee braces." R. Doc. 222-3, ¶ 14.

Despite this consistent sworn evidence from two medical professionals, the majority concludes that a reasonable jury could find that Vickers drew the inference that Dr. Haas had *approved* Faruq's use of knee braces. Not so. The electronic medical entry is hardly a model of clarity. It is doubtful that a reasonable jury could find even that the interpretation given by Vickers (and Clad) was negligent. But to say that the December 23 entry demonstrates that Vickers acted with deliberate indifference dilutes that demanding standard beyond recognition.

Finally, the majority cites Vickers's reaction to a letter that he received from Faruq on January 13, 2009. In that letter, Faruq wrote that a CMS regional medical director had ordered the knee braces. R. Doc. 225-1, at 1. Vickers denied Faruq's request for knee braces on the ground that they were not "found medically necessary during & following [Faruq's] last evaluation." *Id*. In its first summary judgment order, the district court observed that it was unclear why Vickers, in denying the request, relied only on the medical records from December 23 and 31, 2008, and did

---

process referral as requested info not provided. KEC 010709." *See* R. Doc. 222-6; R. Doc. 225-1, at 20.). And the majority simply ignores Faruq's admission that the language on which Vickers said he relied, including the majority's "key language," was in the medical records when Vickers reviewed them on January 7. R. Doc. 222 ¶¶ 21-22; R. Doc. 225 ¶ 15.

not consider more recent medical records dated January 7, 2009. In its later order, however, the court observed that Faruq failed to present evidence that Vickers knew of the January 7 entries in the medical records or that the entries established that Faruq had an active pass for knee braces. At most, the court concluded, Faruq's evidence supported an inference that Vickers was negligent when he simply relied on his previous review of medical records on January 7 and failed to look at the medical records again after receiving the letter on January 13.

The majority says there is "no indication that Vickers attempted to determine whether Faruq had been approved for the braces" after Vickers received Faruq's letter on January 13. *Ante*, at 4. But unlike the prison official in *Sanchez v. Taggart*, 144 F.3d 1154 (8th Cir. 1998), who never inquired further after an inmate provided information about a serious medical condition, Vickers already made an inquiry and determination about Faruq's condition by reviewing the medical records on January 7. Faruq's letter received on January 13 did not assert that new information had been added to the records after Vickers's previous review. The district court was correct, therefore, that the evidence was insufficient to show that Vickers subjectively knew there was reason to inquire further on January 13. If Vickers had reviewed the records on January 13, moreover, he would not have found any new record containing direction from the warden or a doctor's approval. *See* R. Doc. 222-4. There was thus no deliberate indifference.[3]

---

[3]The majority also cites a grievance letter from Faruq to Vickers, received on February 18, 2009, which asserts that the use of knee braces had been approved at an unspecified time by a Dr. Murphy and District Director Dr. Swan. Faruq was transferred from the facility on February 26, 2009, and the grievance was denied as moot. Neither the district court's order nor Faruq's brief on appeal even mentions this February letter, which—like the January letter—does not notify Vickers that new information was added to the medical records after he reviewed them on January 7.

Faruq's remaining points on appeal are without merit. The district court did not abuse its discretion in denying motions for appointment of counsel. The case was not complex, and Faruq demonstrated an ability to investigate and present his case. The court also did not abuse its discretion by refusing to allow additional discovery. I would affirm the judgment of the district court.

_____